### D. C. KER v G. W. PASCHAL ET AL.

(Case No. 3495.)

1. CONTRACT — LOCATION OF LAND CERTIFICATE. — An agreement on the part of an attorney, in consideration of an interest in the land, to do all the legal work, and incur all expenses of whatever kind connected with the location of a land certificate, and getting patent thereon, does not include services rendered necessary by litigation arising after the patent has issued.

2. ATTORNEYS' FEES. — An attorney's fee of $6,000 is excessive, where the client has only one thousand six hundred acres of land involved in the suit.

3. ATTORNEY AND CLIENT — FEES. — Where a suit involved the title to ten thousand acres of land, one thousand six hundred acres being owned by the client, and the remainder by the attorney, to charge the client with one-half of the entire amount of attorneys' fees, and expenses of the litigation, is inequitable.

4. PURCHASER SUBROGATED TO VENDOR'S RIGHTS. — The purchaser from an attorney of an interest in land acquired in payment for services rendered in litigation involving title thereto is subrogated to the rights of his vendor in whatever lien or incumbrance he may have upon the land.

5. PARTITION — PERSONAL JUDGMENT AGAINST THE HEIR. — It is error to render a personal judgment against the heir in a partition proceedings, without limiting his liability to the assets or property derived from his ancestor.

6. INCUMBRANCE — PARTITION. — An incumbrance descending with the land to the heir may be made available as a defense against his right to partition, and to participate as joint owner, until it is re-

moved, or the interest may be sold to adjust the rights of the parties in an equitable partition; but when the interest which has thus descended has been sold in partition proceedings, and the heir has no longer an interest in the land to be partitioned, the purposes of the proceedings for partition will have been accomplished, and the remedies of the other tenants in common to enforce their claim on a moneyed demand against the ancestor exhausted, unless by proceeding to enforce the collection of their account for money by such other form of procedure as may be appropriate.

7. SALES BY CO-TENANT — PARTITION.— Land sold by one co-tenant without the consent or authority of the other, and not the proceeds thereof, should, in a partition of the residue, be charged against the party making such sale.

ERROR from Bexar. Tried below before the Hon. Geo. H. Noonan.

This was a suit brought by Anna Ker on the 25th day of July, 1874, as sole devisee under the will of W. H. Ker, deceased, against Mary C. Paschal, administratrix of the estate of Isaiah A. Paschal, the heirs of said Isaiah, George W. Paschal, Sen., and George W. Paschal, Jr. The plaintiff dying during the pendency of the suit, D. C. Ker, heir at law of the plaintiff, became a party plaintiff, and prosecuted the same.

The petition alleged that in the year 1846 W. H. Ker purchased for his said wife, as her trustee, from certain parties claiming title under a grant to one Maria Feliciana Duran (said grant being commonly called the Cubier grant), a parcel of the land of said grant, fronting about one thousand two hundred and forty varas on the western margin of the Salado creek, running back to the land known as the city tract (San Antonio).

That said I. A. Paschal, an attorney at law, considering that the land embraced by the said grant (Cubier) was subject to entry and location, proposed to said W. H. Ker to join in the location of said land; that thereupon, about the 12th day of May, 1847, said Ker furnished to said Paschal (who had interested with him his brother, George W. Paschal, who was also a lawyer by profession) the funds wherewith said I. A. Paschal purchased of one Guillermo Nuñez a headright certificate for one league and labor of land, and

anticipating litigation (which was to be borne by said Paschals), had said certificate conveyed to said George W. Paschal, it being understood that said Paschals were to contribute their legal and professional services to said enterprise.

That said Paschals, on the 11th of May, 1847, located the Nuñez certificate adjoining the city tract on the west, and surveys Nos. 93 and 94 on the south; that patent issued 7th of June, 1847, to George W. Paschal, assignee of said Nuñez, for a fraction under nineteen labors of land, and including the tract purchased by W. H. Ker in trust for his wife.

That it was therefore agreed between the Paschals and W. H. Ker that George W. Paschal and said Ker are jointly interested in the location covered by the Nuñez certificate, except one thousand varas front of said location, on the west side of the Salado, and extending back to the town tract, which was reserved to petitioner to include her residence.

That said Paschals were associated together in land speculation, as well as in the practice of law; that I. A. Paschal resided at San Antonio and G. W. Paschal at Austin, Galveston and other distant places, and in consideration whereof Geo. W. made I. A. Paschal his agent and attorney, giving him general power over all lands, etc., evidencing said agency by a power of attorney, in writing, bearing date 8th of January, 1847.

That under such authority, as well as his general authority under the partnership, and other circumstances of the case, I. A. Paschal, in his capacity of attorney in fact for Geo. W. Paschal, at the request of the latter, on the 13th of June, 1847, for the purpose of evidencing the nature of their relations, made, signed and delivered to said W. H. Ker an instrument of writing as follows, to wit:

" STATE OF TEXAS, *County of Bexar.*

" Whereas, I, on the 12th day of May, 1847, purchased of one Guillermo Nuñez, in the name of my brother, George W. Paschal, a headright certificate for one league and labor

of land, and the same located on the 11th instant on the Salado creek, adjoining the town tract on the west and surveys Nos. 93 and 94 on the south: Now, be it remembered, that said certificate was purchased on the joint account of the said George W. Paschal and Wm. H. Ker, and they are jointly interested in said location, except one thousand varas front of said location, on the west side of the Salado, and extending back to the town tract, which is reserved to Mrs. Anna Ker, the wife of said Wm. H. Ker, to be taken in such manner as to include the building on which said Ker now resides.

"SAN ANTONIO, June 13, 1847.

(Signed)                                "I. A. PASCHAL,

"Att'y in fact for GEO. W. PASCHAL.

"Addressed to *Maj. Wm. H. Ker, Salado, Texas.*"

Petition averred that, under said instrument and the premises stated, George W. Paschal was constituted a trustee, holding the legal title to the reserved tract in trust for Mrs. Ker, and in like trust for W. H. Ker, as to his interest in the remainder.

Petition alleged that said Paschals and W. H. Ker had disposed of the portion thus reserved to petitioner, and proceeds to charge that the Paschals, for their separate use and benefit, have sold and so appropriated to themselves a large portion of said tract of land, thus held in trust by George W. Paschal; that, not being fully informed, can specify those tracts only which are set forth in the list given by petitioner, consisting of a tract of three hundred and twenty acres, sold to Ackerman for $450; another of one hundred acres to Gembler for $150; another of one hundred acres to Ruis for $200; and another of eight hundred and eighty-five acres to one Elder, at $1.50 per acre, which last named sale said Elder has obtained a decree of court to rescind, but which petitioner has learned will be farther contested on appeal to the supreme court.

Petition alleges that the question of title was determined as between the title under the patent and the Cubier grant by a final decision of the supreme court, and that after the

settlement of that question said George W. Paschal, on the 31st of July, 1873, transferred to his son, George W. Paschal, Jr., among other things, his remaining interest in the said Nuñez tract of land, without receiving any valuable consideration therefor; said George W. Paschal, Jr., being fully apprised of the existence of said trust and of petitioner's interest.

That after the death of I. A. Paschal, Mary C. Paschal, his widow and administratrix, in conjunction with George W. Paschal, Jr., in the year 1873, sold and appropriated to their own use and benefit many other large parcels of land off the said Nuñez tract, specifying the following, viz.: Six hundred and nine acres on the east side of the Salado to J. A. Ruis, at $5 per acre; also, fourteen and eighty-six one-hundredths acres to J. H. Kampman, at $160; another of one hundred and seventy-four acres to the same purchaser, at $870.

Petition alleges that said sales aggregate more than the equitable share of the Paschals, and were made in derogation and in fraud of petitioner's rights; that George W. Paschal, Jr., is unable to respond to petitioner in damages, and prays that he be enjoined from selling or otherwise disposing of any land embraced by said patent to George W. Paschal.

Prayer that petitioner's right to one-half of the land, patented as aforesaid to George W. Paschal, be recognized by the court; that George W. Paschal, Sen., Geo. W. Paschal, Jr., and Mary C. Paschal be compelled to disclose what tracts or interests in said land have been disposed of by them, naming purchasers, the time when, price, terms and conditions, with all other dates requisite to a full account.  Prayer, also, for partition, asking that all lands previously sold by said Paschals be charged to them, and that all lands remaining free and unsold be set apart to petitioner; that her rights to either the land sold to Thos. G. Elder, or to the purchase money therefor (if that be hereafter the decree in the litigation with said Elder), be adjusted, and the one-half thereof be vested in her; that if

there be not sufficient land left to satisfy petitioner's claim to the one-half of said joint property, that then she have a money compensation at the rate of $20 per acre, which she alleges to be the value thereof, and a judgment against said George W. Paschal, Sen., and George W. Paschal, Jr., and said I. A. Paschal's estate, for costs, and for general relief.

The answers of George W. Paschal, Sen., and of Mary C. Paschal, administratrix, were in effect a denial of all the material allegations of the petition which referred to her grounds of action; and an amended answer alleged a satisfaction of the interest or claim of W. H. Ker, if any he ever had, by payment to him, on 7th of May, 1847, by said Paschals, of $832.50, being proceeds of a tract of land sold the said Paschals to Gideon Lee, and in which land said Ker had no interest. That Ker received also divers sums of money, specifically recited in said answer, aggregating $2,131.50, for the four tracts of land on the Nuñez tract, sold to divers persons specified in the answer; that said sums received by him were in full satisfaction of any interest which he might have had in the land in controversy. That said sales were made in the years 1848 and 1849, and that neither W. H. Ker in his life-time, nor his legal representatives since, until now, have ever set up any claim to said land, whereby a presumption of full settlement with, and acquittance by, said Kerr and his representatives, is raised.

The answer of George W. Paschal, Jr., pleaded a general denial; statutes of limitations of four and ten years, stale demand; and for special answer, that he is a purchaser in good faith for a valuable consideration, without notice; and sets up damages to the amount of $5,000 for slander of his title.

The answer of George W. Paschal, Sen., pleads in recon-vention as surviving partner of the late law firm of I. A. & G. W. Paschal, and says that their professional services and expenses about the defense of said land were of the value of $11,000, which are chargeable to said Ker, according to the extent of his interest, if any he had, and prays an adjust-ment of the account and a proportionate decree. The an-

swer pleaded also stale demand and statutes of four and ten years' limitation. Mrs. Mary C. Paschal's answer adopted that filed by George W. Paschal, Sen., as her own.

There was a considerable amount of evidence adduced on the trial; but little of it, however, is necessary to be stated in view of the points presented by the assignment of errors. The defendants do not complain of the judgment which was rendered, and the errors assigned by the plaintiff, who appeals, are limited to such questions as do not require a full statement of the evidence.

The cause was submitted to the court without a jury, and on the hearing it was decreed that the legal title of the Nuñez tract patented as has been stated to George W. Paschal was in said Paschal, but that he held one-half undivided interest thereof in trust for Wm. H. Ker, under whom the plaintiff claims. That one thousand varas front on the west side of the Salado creek, of said tract, were reserved to Mrs. Anna Ker, and that the same has been since sold and is now held by other parties free and discharged from any and all claims of any of the parties to this suit. The decree recites that the court finds that George W. and Isaiah A. Paschal have heretofore sold the several portions alleged in the petition to have been by them sold (except that which was hypothetically stated to have been sold to one Elder), and that the sums of money received by them therefor, with interest to the date of this decree, amount to $2,121.38, to one-half of which sum the plaintiff in this case is entitled, viz., $1,060.69, and which should be credited and accounted for to him.

Also that since the death of I. A. Paschal the administratrix of his estate and Geo. W. Paschal, Jr, have sold three other tracts of land, portions of said Nuñez survey (naming those alleged in the petition to have been thus sold and conveyed), and that in the partition provided for in said decree the said three parcels of land be set apart and allotted to the estate of I. A. Paschal, deceased, and Geo. W. Paschal, Jr. Whereupon the decree recites as follows, to wit: "And it appearing further that said Guillermo Nuñez tract

or survey of land was in litigation for a period of twenty-five years, after which it was finally recovered (the title thereto being in dispute), and that the said Geo. W. and I. A. Paschal rendered professional services in and about said litigation; that they employed and paid large sums to other attorneys, paid costs and other expenses in and about said litigation, and that the value of their services and the sums so paid by them amount, in the aggregate, as a charge against the said plaintiff, to the sum of $6,000; which sum is hereby adjudged to the defendants and against the said plaintiff; and it further appearing that after crediting to the said plaintiff the sum received by the said Paschals from the sales made as mentioned in section 4 of this decree, to wit, the sum of $1,060.69, and crediting and allowing to the said Paschals the sum of $6,000 for their services and money paid out and expended, there remains due to the said Paschals from the said plaintiff the sum of $4,939.31: It is therefore ordered, adjudged and decreed by the court that the said plaintiff have and recover from all of the defendants in this suit one-half of the said Guillermo Nuñez survey of land, remaining unsold at the time of the death of I. A. Paschal, deceased (February, 1868), and that the said Geo. W. Paschal, Jr. (having succeeded to all of his vendor's rights), and the estate of I. A. Paschal, deceased, have and recover from the said plaintiff the said sum of $4,939.31, with lawful interest thereon until paid."

The decree then designates commissioners for partition, directing a division of the land remaining unsold between the plaintiff and the said George W. Paschal, Jr., and the said I. A. Paschal, deceased; one-half thereof to the plaintiff, and the other half to Geo. W. Paschal, Jr., and the estate of I. A. Paschal, deceased, according to value, and that said commissioners proceed to make a survey and partition of said remaining land, "in the manner aforesaid" (as specified in the decree, allotting to the Paschals the land which the administratrix and Geo. W., Jr., had sold after the death of I. A. Paschal), and make report thereof to the next term of court.

The decree further proceeded to adjudge and decree that the balance of $4,939.31 shall be a specific lien upon that portion of the said land remaining unsold which may be allotted and set apart to the plaintiff in this partition; and that, after said partition and confirmation thereof by the court, an order of sale may issue, directing the sheriff of Bexar county to sell the land allotted and set apart to said plaintiff, to satisfy the judgment herein rendered against him and the lien hereby decreed.

The decree proceeded to make partition between the parties of the balance of the Nuñez land certificate, not located upon the Salado, and adjudged one-half the costs of partition against the plaintiff and the other half against Geo. W. Paschal, Jr., and the administratrix of the estate of I. A. Paschal.

From this judgment and decree of the court the plaintiff appealed to the supreme court.

*A. N. Mills* and *A. Dittmar*, for plaintiff in error.

*Waelder & Upson*, for defendants in error,

WALKER, P. J.— The appellant assigns several grounds of error, which, so far as necessary, will be stated in the order and connection of the discussion of them.

The first assignment of error is " that the court erred in adjudging $6,000 to the defendants against plaintiff."

There is testimony in the case which tends to prove that it was expressly agreed at the time of making the contract between W. H. Ker and I. A. Paschal, that in consideration that the former should furnish the requisite land certificates wherewith to locate the land in question, the latter should render the necessary legal services in procuring and maintaining the title to the land thus to be jointly acquired; and if the court trying the cause had determined that such, from the evidence before it, was the contract, it certainly would have been supported by sufficient evidence to warrant that interpretation.    Edmond Ker, a son of W. H. Ker, states that he was present at the making of the contract, and says

that Isaiah A. Paschal proposed to witness' father that, if he would buy certificates, he would have the league located, do all the *legal work connected with the same* as a consideration for the money paid for the certificates, and that they would own the land jointly and equally; which was agreed to by W. H. Ker; which, the witness proceeds to state, was consummated on the part of his father by making the purchase of the certificates, which were by said Paschal located on the land, as had been contemplated, in the name of George W. Paschal at the request of said I. A. Paschal, for the reason given by him, that he might thus be enabled to use W. H. Ker as a witness, if necessary. Witness stated again, in his testimony: "My father bought the certificates; Paschal was to *locate and do all* the work, and get half the proceeds." The testimony of Mrs. Paschal tended to prove, at least, that there was an agreement that her husband would do the "lawing," as she expressed it, but that "her understanding" was that he was to have full pay for it. The indefinite statements by her as to the conversation between the parties which evidenced the contract were such that, without impugning the sincerity of her impression as to the effect of their agreement, it may be deemed that her testimony, to some extent, corroborated that of Edmond Ker, as it tended, at least, to confirm his statement that I. A. Paschal undertook to perform legal services in relation to the title on some terms or other; and it is not inconsistent with what she may have gathered from her husband or learned otherwise, that the "full pay," which he was to receive, would or might consist in the share of the land which he would acquire under the terms of the supposed contract. Certain letters from I. A. Paschal to W. H. Ker, read in evidence, contained matter alike tending to corroborate the statements of Edmond Ker. One brief extract only I will make from a letter dated April 24, 1854, as follows: "You are aware [thus it is in the record, but written, doubtless, instead of "aware," "to have"] one-half of the land and proceeds, deducting necessary expenses. For your portion of the purchase-money, as here stated, you may rely on receiving with great

certainty in a short time." The subject of the letter related to proceeds of sales made by the writer to certain purchasers of portions of the land.

The evidence evidently failed to satisfy the mind of the court that the contract extended to or established an agreement under which the Paschals jointly, or that I. A. Paschal alone, undertook, for the consideration which has been named, to render legal services of the *character* which are proved to have been rendered by them in litigating with adverse claimants to the land. This evidence, however worthy of credibility, did not relieve the subject from doubt. The principal witness, Edmond Ker, as appears from his statement, was in the eleventh or twelfth year of his age at the time the contract was entered into; about twenty-eight years before the period at which he testified. The liability of a lad so young not to fully comprehend the full meaning of the terms of the contract, together with the period of time which had since elapsed, were circumstances which were proper to be considered in weighing the force of the evidence given by him, even if the facts stated by him, if true, had been otherwise conclusive, which, however, as will be seen, they were not. The contract, as stated by him, was that Paschal would have the certificates located, and do all the legal work *connected with the same*. It is easy to conceive that the parties may have had in mind, under such terms of an agreement, the necessary legal care and superintendence necessary to make a proper file and designation, the supervision and direction of a valid legal survey and return of field-notes, and the due issuance of a patent. The contemplated venture involved an assault upon an old grant, against which attack, impediments, as might be anticipated, would be placed in every available way at each step taken against it, thus requiring the direction by, and the assistance of, legal counsel at all the stages of the proceeding, until a patent should be procured. And in addition, it might have been anticipated that the auxiliary remedies of the law, through suits by *mandamus*, against officers of the state and county, might be necessary in order to obtain a pat-

ent. In that view, the language used by the witness is suggestive, that the contract may have contemplated only such legal services as would be required in the contingencies and for the purposes above supposed; "to do all the legal work *connected with the location of the certificate*" may admit of the interpretation that it has reference not to the litigation that subsequently might arise concerning the title, but simply to the services, labor and litigation, if necessary, which would be incidental to procuring a patent on a location and survey made under a land certificate.

The same witness states that after his father's removal to Lavaca, in accordance with the request of the latter to I. A. Paschal to explain to witness the transaction between them, says that he told him his father had bought and paid for the certificates according to their agreement, and that he had had the same located at his own expense, also in accordance with said agreement, and that it was his duty under the contract to incur all expenses of whatever kind *in locating the certificates and getting the patent.* The witness, however, did further state that I. A. Paschal told his father, at the time of making the location (probably in 1846), that there would have to be a suit about the land, and his services in defending the suit, together with other expenses in clearing the title, would be a set-off equal to the amount his father paid for the certificates.

"A contract is to be construed in reference to the time when it was made, and to contemporaneous laws and usages." . . . "And as to the mode in which a contract is to be performed, the rule is that an agreement must be performed according to its terms as understood and assented to by the parties. The assent and understanding of the parties is to be deduced from the terms of the contract, and the accompanying incidental acts by the rules of legal construction; and whether the circumstances constitute a performance is a question for a jury to determine." Story on Con., sec. 968. Applying these rules of construction to the contract, to ascertain what acts and services of the locator were intended to be comprehended under it, we are of the opinion that

under the evidence it was admissible for the court to determine, if it was satisfied that the plaintiff's evidence fell short of establishing the contract as by the plaintiff it was alleged to be, that the defendants were entitled to recover, and have allowed them the reasonable value of the attorneys' fees claimed, having proper regard to an equitable adjustment of the same according to the rules of law applicable to the facts of the case.

The next inquiry under the first assignment of errors is whether the evidence warrants the judgment in respect to the *amount* of fees allowed as a charge against the interest of the plaintiff in the land. The court found as the basis of the decree, that the plaintiff was the equitable owner of an equal undivided one-half of the Nuñez survey, containing about three thousand one hundred and eighty acres of land. The answer of Geo. W. Paschal, Sen., and that of Mrs. Mary C. Paschal, administratrix, prayed that the value of the professional services and expenses about the defense of said land shall be chargeable to the plaintiff *to the extent of the interest of* W. H. Ker in the same; the defendants asked for no greater or more onerous charge to be adjudged against the plaintiff's interest; they pray for an adjustment of the account and a *proportionate* decree. The claim set up for damages for slander of title need not be noticed here, and it could not have been, nor was it considered through the evidence, nor in the action of the court. The sole issue then was, under the pleadings, what proportion of the expenses and professional services was the plaintiff's estate in said land chargeable with, having regard to *the extent* of that interest? By no rule known to equity proceedings could the defendants have demanded more than they did. The plaintiff's ancestor, W. H. Ker, on such a basis was chargeable with only one-half of such professional services and expenses as were necessary to be rendered and incurred in and about the litigation concerning the title to said land, and G. W. and I. A. Paschal, or I. A. Paschal, would have been chargeable with the other half, accordingly as they may have separately or jointly owned such other one-half. The value of

such services and expenses is attempted to be established, not d.ectly, but circumstantially, and by relation or comparison. It was shown that this land was involved in the litigation of a certain suit entitled Dangerfield v. Paschal, which lasted a great number of years with varying fortunes. That ten thousand acres of land were involved in the litigation.

It was shown by Edmond Ker, and not contradicted, that his father had no other land in Texas than the interest here sued for; and the defendants established by N. O. Green that there was by estimation ten thousand acres involved in the litigation of the Cubier grant. It is to be inferred from the evidence that the Dangerfield v. Paschal suit involved the title to the Cubier grant. F. L. Paschal testified that in 1847 I. A. Paschal located two leagues on the Cubier grant and two leagues on the Zambrano grant, and made other locations below and adjoining the Nuñez on both sides of the Salado. N. O. Green testified that in the Dangerfield v. Paschal litigation " he looked upon the Paschals as fighting their own battles;" and, also, that "they were the owners of the interests involved in that litigation." The same witness, who is an attorney at law, and had been of counsel on the Dangerfield side of that litigation, testifying further on the subject of the value of the professional services of the Paschals, said: "It is hard to estimate the value of fees. I know most all fees in such cases were conditional. I think the fee of the Paschals in the first and second trials worth about $5,000. The property was then regarded to be as valuable as now." It was proved also by him that the estate of I. A. Paschal paid on the second trial of the Dangerfield case (at which trial the Paschals were not, it seems, attending personally), to a firm of lawyers for services in behalf of the Paschal side, $1,000 in the district court, and $300 in the supreme court; also, $50, cost of briefs in the supreme court. This testimony furnishes the highest standard contained in the evidence whereby to fix the value of the professional services rendered. It is, indeed, all the testimony directly bearing upon the valuation or estimate of the serv-

ices rendered. The extreme limit then that is furnished is about $6,350 (allowing even the amount paid to other attorneys), as the full value of the services rendered directly and in person, and by the employment of others, in the entire litigation in behalf of all the interests shown to have been involved belonging to the Paschals, as well as the comparatively small interest of a little exceeding sixteen hundred acres belonging to the plaintiff.

Six thousand dollars of this sum is adjudged chargeable against the plaintiff's interest. If the litigation in which the attorneys' fees are charged had embraced no other nor greater interests than the tract of land which is the subject of partition in this suit, and supposing the sum charged to be a reasonable compensation, the ratable proportion of it chargeable against the plaintiff's one-half interest could not be claimed to exceed one-half of the amount, say $3,175.

But the evidence will not justify taking that state of case, as has been already made apparent; the Paschals were conducting a litigation which involved an interest of ten thousand acres of land, and perhaps of equal relative value to this here in controversy, in which they owned or claimed the whole, except about sixteen hundred acres; this tract is shown by the patent to have been a separate and independent survey, and it would seem that the litigation concerning the title to it would not necessarily involve litigation with other parties claiming other tracts or grants, and if the litigation were all included in one or several suits, that the increased professional labor and responsibility required for the defense or prosecution of interests relating to the other tracts embraced in said ten thousand acres would be apparent, and would impose upon those whose interests were concerned the duty to provide for the payment of the expense — certainly it would not devolve upon W. H. Ker. Estimating the tract in dispute in this suit as being one-third of the ten thousand acres, and the professional fees at $6,350, the plaintiff would be properly chargeable with one-sixth part, which would amount to about $1,058. If there exist any facts relating to the litigation for which the fees of attor-

neys are estimated by the witness who testified on the subject, which ought to qualify our construction, they are not, we think, developed in the statement of facts; and from the evidence before us, in the record, we conclude that there was error in charging against the plaintiff's interest in the land the sum of $6,000; that a partition based on such an estimate of the rights of the parties would be plainly unequal, and that the judgment and decree of the court founded upon it is erroneous, and ought to be reversed.

It cannot be maintained, as it is urged it may, by appellant's counsel, that George W. Paschal, Jr., as purchaser and vendee of George W. Paschal, Sen., may not be subrogated under such conveyance to the rights which the latter had, under whatever lien or incumbrance he may have had, if any, upon the land for his services as an attorney. Walker v. Lawler's Heirs, 45 Tex., 532, and authorities there cited.

The second ground of error assigned is, that the court erred in rendering a general personal judgment against the plaintiff, D. C. Ker, for the balance remaining of the $6,000, without limiting his liability to the assets or property derived from his ancestor.

As the judgment will be reversed and the cause remanded for another trial, it does not become essential to construe and determine what is the legal effect of the judgment, when considered as an entirety, in respect to the question which is above made. The judgment, it is true, is in form that the defendants "have and recover from the plaintiff the said sum of $4,939.31, with lawful interest thereon until paid;" but it proceeds further to direct the mode of satisfaction by an order of sale of the particular property on which the decree gives a lien; and there is no further provision made, nor order given, for the issuance of execution generally, or for the satisfaction of any balance left unpaid after the sale specially ordered. The finding of facts by the court as the premises of the foregoing portion of the decree recites that the value of the services and expenses rendered and paid

by the Paschals "amount in the aggregate, as a charge against the plaintiff, to the sum of $6,000, which sum is hereby adjudged to the defendants and against the said plaintiffs,"— proceeding to reduce the same by crediting the plaintiff with proceeds of sales of certain lands sold by them, and thus obtaining the amount for which the formal recital of recovery against plaintiff was made, with decree of lien and order of sale. The judgment and decree was probably intended by the court to have no further operation against the plaintiff than to subject the land to sale; yet its terms do not thus limit the recovery against the plaintiff to the extent of the assets inherited by him from his ancestor which should come to his hands. The judgment certainly should thus limit the terms and extent of the recovery by unequivocal and well defined expressions in its recitals, for the heir is not liable at all personally except to the extent of assets. The State v. Lewellyn, 25 Tex., 797; Norwood v. Cobb, 37 Tex., 146. The equities which may be adjusted and enforced in a suit for partition are such only as arise out of the relation of the parties to the common property. Freeman on Co-tenancy and Partition, p. 506. To say the least, the form of the judgment leaves it subject to doubt, whether, as it stands, it is not an absolute adjudication against the plaintiff as a personal judgment for the amount for which it was rendered. The incumbrance which descended with the land to the heir may be made available as a defense against his right to partition and to participate as joint owner until it is removed, or the interest may be decreed to be sold to adjust the rights of the parties in an equitable partition; but when the interest which has thus descended has been sold in partition proceedings, and the heir has no longer an interest in the land to be partitioned, the purposes of the proceedings for partition will have been accomplished, and the remedies of the other tenants in common, to enforce their claim on a moneyed demand against the ancestor, exhausted, unless by proceeding to enforce the collection of their account for money by such other form of procedure

as may be appropriate. There is neither allegation nor proof that the plaintiff had any assets derived from his ancestor's estate.

We do not deem it necessary to consider the other assignments of error. They relate mainly to the admission and rejection of testimony, and the rulings which were made seem to be in accordance with the rules of evidence applicable to the subject. We do not discover in the questions decided, to which exceptions were taken, any suggesting such error as requires serious consideration, in view of the reversal of the judgment and another trial.

The basis on which the court decreed the partition to be made was substantially correct. The first decree which was made by the court was reformed on the plaintiff's motion, and that which has been recited in this opinion substituted in its place, and was adapted in some important particulars to conform to the views that were urged by the plaintiff's motion to reform. The appellant, however, assigns that the court erred in partially overruling his motion to reconsider and to remodel the decree, or to rehear the cause. This opinion has sufficiently indicated our views as to some of the grounds of the motion, and we will not consume time in stating the grounds which are thus disposed of. The remaining questions, exclusive of those just alluded to, involve the proposition, whether or not it was correct to exclude from the actual partition to be made the tracts of land which were sold by the Paschals before the death of I. A. Paschal, and in lieu thereof to treat the proceeds of the sale as items for adjustment in the settlement of account between the plaintiff and said Paschals.

If those sales had been made without the consent or authority of W. H. Ker, and not ratified and approved by him afterwards, certainly the mere relationship of co-tenancy would not have had the effect to validate said sales to the prejudice of the plaintiff in partition. Trammel v. McDade, 29 Tex., 360; Hanks v. Enloe, 33 Tex., 627; Dorn v. Dunham, 24 Tex., 376; McKey v. Welch, 22 Tex., 396. If, however, the sales were made with the knowledge and consent

of W. H. Ker,— dealing with each other as copartners in a speculation or venture in the acquisition and sale of the lands, with authority on the part of I. A. Paschal in behalf of said Ker to negotiate and effect sales, and receive the price for their common benefit, the lands thus by common consent and action, when conveyed to the purchasers, would cease to constitute part or parcel of lands held in common between them, and Ker would be estopped from asserting afterwards a claim to the lands sold in partition, or to require his co-tenant to account with him as cotenant for the land in the partition of the residue held by them. In the proceedings for partition, it would be proper, nevertheless, in adjusting such equities of all the parties as are presented in this case, as a matter of account between them, having relation to mutual charges and credits against and for each other, to ascertain and settle such indebtedness, and it would certainly present proper subject-matter for the action of the court in order to do justice between them. The partnership dealings, if such there were, might require settlement, and in a proper case a court of equity would so adapt the remedy as to charge, if need be, the interest of one or the other with the balance due, according to the nature of the case. The plaintiff introduced and read as evidence letters from I. A. Paschal, tending to show the relations and dealings of the parties in respect to the making of sales of land — showing, too, exhibits therein, of sales as actually made — prices, terms, amounts, etc.; and no evidence whatever was offered which tended to show any objection to the sales, or that they were not made (as from the letters they apparently were) in accordance with a perfect understanding with each other. The decree contemplates and provides, as it ought to have done, for the partition on the terms designated of all the other lands remaining unsold, allotting to the estate of I. A. Paschal, deceased, and to Geo. W. Paschal, Jr., to their share the tracts which they had sold, which in the partition will be charged to them; and the residue, that is, that not sold, to be partitioned in connection with the allotment

aforesaid, giving to the plaintiff an amount equal, according to quality and quantity, to the share of the defendants. The partition thus to be made providing also for the payment of whatever may be due from the plaintiff on account of the expenses and fees due, if any, will, it would seem, attain the justice of the case in accordance with the principles of law.

For the errors which we have indicated, the judgment must be reversed and the cause remanded, and so we shall award.

Reversed and remanded.